JOURNAL ENTRY AND OPINION
This is an appeal from an order of Judge Eileen A. Gallagher that denied appellant Floyd Youngblood's motion to vacate his guilty pleas after he was sentenced to consecutive prison terms totaling over eleven years on twelve convictions of fourth and fifth degree felonies. He also claims his lawyer was ineffective for failing to advise him of the likelihood of consecutive sentences, and that the sentences were unlawfully imposed. We affirm the convictions, vacate the sentences, and remand for resentencing.
Youngblood was charged with a total of twenty-eight offenses in three separate indictments. In November of 1998, he was arrested for possession of two stolen checkbooks and a stolen debit card. He had used one of the checkbooks to forge four checks and obtained money for them using the identity of the debit card's owner. On March 11, 1999, in Case No. 373112, he was charged with three counts of receiving stolen property, R.C. 2913.51, four counts of forgery, R.C. 2913.31, four counts of uttering, R.C. 2913.31, one count of falsification, R.C. 2921.13, and one count of theft, R.C. 2913.02. On June 22, 1999, in Case No. 377442, he was indicted on a single count of forgery, R.C. 2913.31, stemming from his use of another person's identity and credit information when he applied for credit from a furniture store.
On July 20, 1999, he pleaded guilty to six of the thirteen counts in Case No. 373112: three counts of receiving stolen property, two counts of forgery, and one count of uttering, all fifth degree felonies, and guilty to the forgery charge in Case No. 377442, another fifth degree felony. On August 18, 1999, when Youngblood failed to appear for sentencing, a capias was issued.
On November 8, 1999, in Case No. 382987, he was charged with five counts of forgery, five counts of uttering, three counts of theft, and one count of receiving stolen property that resulted from his attempt to forge and cash five different checks, stolen from a single individual, at two separate financial institutions on two separate days. He was later apprehended and returned to custody.
On April 12, 2000, he pleaded guilty to five of the fourteen counts in Case No. 382987: two counts of forgery, two counts of theft, and one count of receiving stolen property, all fifth degree felonies except for one forgery count involving a $5,200 check and one theft count involving the same check, both fourth degree felonies.
Youngblood was sentenced to a total of 133 months, or eleven years and one month in prison. He received eleven months in prison on each fifth degree felony count in Case Nos. 373112 and 377442, sixteen months on the fourth degree felony charge of forgery, and ten months each on the remaining four counts in Case No. 382987. All of the sentences were imposed consecutively; the sixty-six month sentence under Case No. 373112, to be followed by the eleven-month sentence under Case No. 377442 and the 56-month sentence under Case No. 382987. Thereafter, Youngblood's motion to reconsider his sentence was denied as were his two motions to vacate his plea.
The first and third assignments of error state as follows:
 I. THE TRIAL COURT ERRED BY ABUSING ITS DISCRETION IN DENYING APPELLANT, FLOYD YOUNGBLOOD'S, MOTION TO WITHDRAW HIS GUILTY PLEAS BECAUSE WITHDRAWAL OF HIS GUILTY PLEAS WERE NECESSARY TO CORRECT A MANIFEST INJUSTICE.
 III. APPELLANT, FLOYD YOUNGBLOOD, WAS DEPRIVED OF HIS CONSTITUTIONAL RIGHT TO EFFECT ASSISTANCE OF COUNSEL BY TRIAL COUNSEL'S FAILURE TO ADVISE APPELLANT THAT HE COULD RECEIVE TWELVE CONSECUTIVE SENTENCES BY ENTERING GUILTY PLEAS TO TWELVE DIFFERENT OFFENSES IN CASE NOS. CR-373112, CR-377442, AND CR-382987.
Both of these assignments claim that Youngblood's pleas are invalid because he was unaware, or insufficiently aware, of the possible sentences he faced. The two motions to vacate his guilty pleas filed after sentencing were, in effect, motions to withdraw his guilty pleas pursuant to Crim.R. 32.1, and not postconviction petitions pursuant to Crim.R. 35 and R.C. 2953.21. Crim.R. 32.1 allows a judge to permit withdrawal of a guilty plea after sentencing to correct manifest injustice. Youngblood moved to withdraw his pleas because he was unhappy with the severity of the sentences imposed and claimed, even though he had been informed of the possibility of consecutive sentences, that the likelihood of such was not made clear to him. His claim of ineffective assistance of counsel is based upon his lawyer not adequately informing him of that same likelihood.
The record of Youngblood's plea proceedings shows that the judge informed him of the maximum sentence on each count to which he pleaded guilty and that he could be sentenced consecutively. Youngblood admits as much but, in his first assignment of error, alleges his lawyer did not inform him that consecutive sentences were likely while, in the third assignment, claims that his lawyer misinformed him that consecutive sentences were not likely.
To show ineffective assistance of counsel, Youngblood must show not only that his lawyer's representation fell below reasonable professional standards, but that he was prejudiced as a result. Strickland v. Washington (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 2064,80 L.Ed.2d 674, 693; State v. Johnson (2000), 88 Ohio St.3d 95, 108, 723 N.E.2d 1054,1067. In order to challenge his guilty plea, he must show that, but for the lawyer's errors, there is a reasonable probability that he would not have pleaded guilty and would have insisted on going to trial. Hill v. Lockhart (1985), 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203,210; State v. Xie (1992), 62 Ohio St.3d 521, 524, 584 N.E.2d 715, 717. This ineffective assistance claim fails because there is no evidence of the attorney-client communications on this record and, thus, no evidence of either unprofessional conduct or prejudice. The lack of evidence of misinformation during sentencing also defeats the manifest injustice claims. Such allegations should be raised in postconviction proceedings.
Youngblood was informed of the possibility of consecutive sentences, and his pleas contained no promises or agreements on sentencing. We find no manifest injustice owing to his mistaken hopes or beliefs concerning his likely sentence in light of the fact that he was informed and sentenced within the range of possible sentences. The first and third assignments of error are overruled.
Youngblood's second assignment states:
 II. THE TRIAL COURT ERRED BY IMPOSING CONSECUTIVE PRISON TERMS FOR APPELLANT, FLOYD YOUNGBLOOD'S, TWELVE CONVICTIONS IN CASE NOS. CR-373112, CR-377442, AND CR-382987 BECAUSE THE RECORD DOES NOT SUPPORT THE SENTENCES AND THE SENTENCES ARE CONTRARY TO LAW.
On March 29, 2000, Youngblood was given consecutive prison terms for all counts, resulting in a total prison sentence of eleven years and one month. In passing sentence, the judge recounted his previous criminal history, stating that he had been ripping people off since 1991, and had served time in prison for other theft offenses. She then stated the findings necessary to support the imposition of consecutive sentences under R.C. 2929.14(E)(4), relying on Youngblood's criminal history to support the likelihood of repeat offenses, and stating that the harm caused to the public in the frauds and thefts which he had perpetrated upon them is so great that no single prison term would adequately reflect the seriousness of his conduct. Youngblood claims the judge failed to give adequate reasons for the sentences, and that the sentences were not supported by the record.
When holding a sentencing hearing, a judge is required to state the reasons for imposing consecutive sentences, R.C. 2929.19(B)(2)(c), and the judge recited Youngblood's criminal history with a brief statement that the sentence was imposed because of his criminal past. A bare recitation of a defendant's criminal history does not qualify as a statement of reasons, State v. Albert (1997), 124 Ohio App.3d 225, 230,705 N.E.2d 1274, 1277, and a judge is required to state reasons supporting each finding made. See R.C. 2929.19(B)(2) (trial court shall make a finding that gives its reasons when imposing particular sentences). The judge's stated reasons might be sufficient to support the findings relating to Youngblood's recidivism, but she did not explain why his eleven-year definite term of imprisonment was proportionate to the severity of the offenses. R.C. 2929.14(E)(4).
We agree that Youngblood's past is rife with offenses similar to those here, and over the past ten years he has been given numerous opportunities to address and correct his behavior, without apparent success. That same history, however, illustrates a disproportionate leap in imposing the current sentence. Between February 1992 and September 1993, Youngblood was convicted of multiple counts in five separate cases, at least three of which were committed while on probation for the first. As a result of all of these convictions, he served about seventeen months in prison between July 1993 and December 1994.
Between February 1995 and September 1996, he was convicted of theft and fraud charges in four more cases, two of them in federal court. Significantly, in March 1995 he failed to appear for sentencing on his first federal conviction, and was later arrested and convicted on subsequent federal fraud charges. This behavior mirrors his failure to appear for sentencing in two cases here, and his apprehension after indictment on yet additional charges. For these four cases he served another eighteen months in prison between May 1996 and November 1997, and was on federal post-release supervision when he committed the offenses in this case. Indeed, when he was sentenced on these cases he was already in prison for the violation of his federal post-release conditions.[1]
There was no explanation why Youngblood's conduct was so severe that he should be sentenced to eleven years in prison, when prior sentences for similar or even more severe conduct were far less. Certainly, continued criminal behavior would warrant heightened sentencing when his previous sentences obviously had little or no deterrent effect. Clearly his inveterate nature must have been an issue in sentencing prior to the convictions here, yet his prior sentences did not approach those now imposed. The judge was required to explain why Youngblood's incarceration should jump to eleven years, when he had previously served only eighteen months for similar or more severe offenses. While increased punishment is reasonable, the graduation here is steep, and should have been explained.
We also note that R.C. 2929.19(B)(2)(e) requires a judge to give reasons in the following circumstances:
 If the sentence is for two or more offenses arising out of a single incident and it imposes a prison term for those offenses that is the maximum prison term allowed for the offense of the highest degree * * *.
R.C. 2929.19(B)(2)(e) is part of a statutory scheme that discourages the imposition of consecutive sentences generally, and particularly discourages consecutive sentences for offenses arising from a single incident. A contrary view would provide a loophole incarcerating offenders to maximum prison terms for single offenses without providing reasons, as long as the conviction included another offense committed in a separate incident. State v. Beard (Sept. 5, 2000), Clermont App. No. CA2000-02-012, unreported (overruling, inter alia, State v. Simpson (Apr. 3, 2000), Clermont App. No. CA99-07-078, unreported). Because such a reading would defeat the statutory intention, R.C. 2929.19(B)(2)(e) has been interpreted to require reasons when consecutive sentences for offenses arising from a single incident meet or exceed the statutory maximum for the offense of the highest degree. See Beard, supra; State v. O'Linn (Mar. 16, 2000), Cuyahoga App. No. 75815, unreported; State v. Agbesua (Jan. 5, 2001), Greene App. No. 2000 CA 23, unreported. This directive supplements any other requirements to state reasons for maximum or consecutive sentences, and requires a judge to specifically and separately address offenses that arise from a single incident when giving reasons for a sentence. This does not necessarily require that one state reasons different from those used in support of other findings, but a judge must show consideration of the issue and relate whatever reasons are given to that issue.
In Case No. 373112, Youngblood pleaded guilty to six separate offenses, but those offenses did not arise as the result of six separate incidents. Youngblood was arrested on November 30, 1998, while in possession of two stolen checkbooks and one stolen debit card. From this arrest, he pleaded guilty to three separate charges of receiving stolen property. Although the items were stolen from three different victims, there is no evidence that Youngblood had received the stolen property as a single package from the person who purloined them, or received each in three separate incidents.
On November 25, 1998 Youngblood forged two checks, from a single victim's account, in the amounts of $700 and $900, and presented them to financial institutions for payment. On November 27, 1998, he used the same scheme to obtain cash for a $600 check. Youngblood pleaded guilty to two counts of forgery based on the November 25 incident, and one count of uttering based upon the November 27 incident.
In Case No. 382987, Youngblood faced charges stemming from his conduct between June 29, 1999, and July 6, 1999. On June 30, 1999, he used a stolen, forged check to obtain $4,900 from Money Mart and on July 6, 1999, obtained $5,200 from Fifth Third Bank using a forged check stolen from the same victim. He pleaded guilty to one count of forgery and one count of theft stemming from each incident, and the count for receiving stolen property related to the use of the stolen checks.
Although Youngblood pleaded guilty to twelve separate criminal charges, those charges did not arise from twelve separate incidents, and comprised only three separate courses of conduct. Furthermore, Youngblood was found guilty of forging checks amounting to $12,300, although he was charged in Case No. 382987 with theft offenses amounting to $16,998.92, and, in Case No. 373112, with $3,700 worth of offenses. In Case No. 377442, Youngblood was charged with falsely obtaining a $4,000 credit line at a furniture store, but no charges concerning the amount of goods or value he actually obtained. Even adding the $4,000 to the forgery charges, Youngblood was sentenced to over eleven years in prison for property crimes involving $24,698.92, less than half of which he actually obtained.
The offenses in the instant cases were of similar or less serious character than the previous offenses, for which Youngblood served an aggregate of approximately thirty-three months in prison. Because the increased severity of the sentences was based primarily on the inveterate nature of his behavior, and not on the severity of the offenses, we find that the judge failed to state adequate reasons supporting the findings relevant to consecutive sentencing, particularly those relating to severity and proportionality.
We, therefore, affirm the convictions, but vacate the sentences and remand these cases for resentencing.
It is ordered that the parties shall bear their own costs.
This court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution. Appellant's convictions having been affirmed, any bail pending appeal is terminated.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 ___________________ ANNE L. KILBANE, J.:
JAMES J. SWEENEY, J., and COLLEEN CONWAY COONEY, J., CONCUR.
[1] The sentences here were to run concurrent with Youngblood's federal time.